UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY BRIAN ELKINS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:17-cv-00631-ACA |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## **MEMORANDUM OPINION**

Plaintiff Timothy Brian Elkins appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

Mr. Elkins applied for a period of disability and disability insurance benefits on February 18, 2014. (R. 19; 66). Mr. Elkins alleges that his disability began on September 27, 2012. (R. 19; 66). The Commissioner initially denied Mr. Elkins's claim on April 18, 2014. (R. 79). Mr. Elkins requested a hearing before an Administrative Law Judge (ALJ). (R. 87). After holding a hearing, the ALJ issued

an unfavorable decision on February 9, 2016. (R. 27). On February 17, 2017, the Appeals Council declined Mr. Elkins's request for review (R. 1), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158-59 (11th Cir.2004) (per curiam) (internal quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Elkins has not engaged in substantial gainful activity since September 27, 2012, the alleged onset date. (R. 21). The ALJ found that Mr. Elkins has the following severe impairments: tenosynovitis and degenerative disc disease. (R. 21). The ALJ then concluded that Mr. Elkins does not suffer from an impairment or combination of impairments that meets or

3

medically equals the severity of one of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 23).

After considering the evidence of record, the ALJ determined that Mr. Elkins has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except: occasionally lift 20 pounds and 10 pounds frequently; sit at least 6 hours during an 8-hour workday; stand and walk at least 6 hours in an 8-hour workday; frequently lift overhead on the left[] and right sides; frequently handle on the right and left; frequently feel on the right and left; and frequently finger on the right and left.

(R. 23). Based on this RFC, the ALJ found that Mr. Elkins cannot perform his past relevant work as a seat assembler, machine tender, or hand packager. (R. 25).

Relying on testimony from a vocational expert, the ALJ concluded that jobs exist in the national economy that Mr. Elkins can perform, including garment sorter, housekeeper, and cashier. (R. 26). Accordingly, the ALJ determined that Mr. Elkins has not been under a disability as defined in the Social Security Act, since September 27, 2012 through the date of the decision. (R. 27).

## IV. DISCUSSION

Mr. Elkins argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) the Appeals Council failed to determine what weight to assign to a worker's compensation order with respect to Mr. Elkins's credibility and an evaluation of the medical opinion evidence, and (2) the Appeals Council failed to review the worker's compensation order solely

4

because it was dated after the ALJ's decision without considering whether the worker's compensation order was chronologically relevant. The court examines each issue in turn.

### A. The Appeals Council Did Not Err in Denying Review Because the Worker's Compensation Order Does Not Render the ALJ's Decision Erroneous

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council must consider additional evidence submitted by a claimant if it is new, material, and chronologically relevant. 20 C.F.R. § 416.1470(b). Then, the Appeals Council must decide if the new information renders the ALJ's "action, findings, or conclusion . . . contrary to the weight of the evidence currently of record." *Id.* "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram,* 496 F.3d at 1262.

After the ALJ issued her decision, Mr. Elkins submitted to the Appeals Council Interim Findings of Facts, Conclusions of Law, and Final Judgment from the Circuit Court of Marshall County in which the state court found that Mr. Elkins was entitled to temporary total disability benefits because of work-related injuries to his left and right wrists and hands. (R. 4; 195-204).

5

When it denied review, the Appeals Council stated:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence. We considered whether the Administrative Law Judge's actions, findings or conclusion is contrary to the weight of the evidence currently of record.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 2).

Under regulations that were in effect when Mr. Elkins filed his claim for disability benefits and case law interpreting and applying those regulations, the Commissioner was not bound by disability findings from other governmental agencies, but the Commissioner had to consider those disability findings and give the determinations great weight. 20 C.F.R. § 404.1504; *see also Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (stating that "[g]enerally, the findings of disability by another agency, although not binding on the Secretary, are entitled to great weight" and remanding because the ALJ erred "in not giving great weight" to a state worker's compensation agency's "finding of temporary total disability") (internal quotation marks and alteration omitted); *Boyette v. Comm'r of Soc. Sec.*, 605 F. App'x. 777, 779 (11th Cir. 2015) (other governmental agency "disability ratings are . . . not binding on the ALJ, but such ratings should be considered and 'given great weight'") (quoting *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984)); SSR 06-3p, 2006 WL 2329939, at *6-7 ("We are required to evaluate all

the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered. . . .").[1]

---

[1] When Mr. Elkins filed his application for benefits, 20 C.F.R. § 404.1504 stated:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. As amended on March 27, 2017, 20 C.F.R. § 404.1504 now provides:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504.

Because Mr. Elkins filed his claim for benefits before March 27, 2017, the Commissioner was required to consider the worker's compensation order.

Mr. Elkins makes no substantive argument with respect to how the Appeals Council's consideration of the worker's compensation order, when evaluated against the record as a whole, renders erroneous the ALJ's denial of benefits. Rather, in his briefs, Mr. Elkins largely block quotes or summarizes, with no analysis, cases in which various federal courts have recited the general standard for consideration of other governmental agencies' determinations of disability and in which courts have remanded because the ALJ failed to assign great weight to those disability ratings. (*See generally* Doc. 12, pp. 31-36; Doc. 14, pp. 2-3).

In the argument heading, Mr. Elkins appears to assert that, based on the worker's compensation order, the ALJ should have credited his subjective complaints of pain and evaluated differently the conflicting medical opinions in the record. (Doc. 12, p. 31 ("The Appeals Council Failed to Determine What Weight Should Be Assigned to Worker's Compensation Order Regarding Credibility of Claimant and Conflicting Medical Opinions")). The court finds that the worker's compensation order does not provide a basis for relief from the administration decision.

With respect to his contention that the worker's compensation order should impact the ALJ's credibility determination, Mr. Elkins seemingly relies on the state court's finding that Mr. Elkins's testimony during the worker's compensation trial was credible. (*See* R. 196). Mr. Elkins does not cite, and the court has not

8

located, authority explaining that a state court's credibility findings are binding on the Social Security Administration or otherwise should impact the Commissioners's assessment of a claimant's subjective complaints of pain. In any event, consistent with the relevant regulations, *see* 20 C.F.R. § 404.1529, the ALJ evaluated Mr. Elkins's social security hearing testimony against the record as a whole, including the objective medical evidence, the opinion testimony, and Mr. Elkins's activities of daily living. (R. 23-25).

Mr. Elkins argues generally that the Appeals Council did not determine what weight to assign the worker's compensation opinion regarding conflicting medical opinions. (Doc. 12, p. 31). Mr. Elkins does not indicate which medical opinions the Commissioner should have evaluated differently in light of the worker's compensation order. (*See generally* Doc. 12, pp. 31-36). As best as the court can decipher, Mr. Elkins submits that the Appeals Council, consistent with the worker's compensation order, should have credited the disability opinion of Dr. Jason Junkins and rejected the opinions of other physicians.

In support of its disability finding, the state court explained:

> The Court has thoroughly reviewed Dr. Junkins' medical records and notes on June 6, 2013, Dr. Junkins restricted the Plaintiff from working until he was released after surgery. Because of this, the Court is of the opinion the Plaintiff is entitled to recovery temporary total disability benefits from June 6, 2013, up and until he is returned to work or placed at maximum medical recovery after surgery is performed on his right and left hands and wrists.

9

(R. 200). The administrative record in this case contains Dr. Junkins' June 6, 2013 certificate to return to work in which he stated that until cleared by a surgeon, Mr. Elkins was unable to return to work. (R. 438). The ALJ considered Dr. Junkins' return to work opinion and an April 29, 2015 statement of disability that Dr. Junkins completed on behalf of Mr. Elkins in conjunction with a MetLife disability claim. (R. 22; *see* R. 436; 438). In the statement of disability, Dr. Junkins opined that Mr. Elkins is unable to return to work because of increasing wrist and hand pain. (R. 437). The ALJ rejected Dr. Junkins' opinion because the ALJ found that the opinion "is inconsistent with the weight of the evidence in this case." (R. 25). That evidence includes a number of treatment notes and medical opinions that post-date Mr. Elkins's work-related injuries in which doctors found that Mr. Elkins has only mild restrictions in his ability to use his wrists and hands and that those restrictions do not prevent Mr. Elkins from working.

On January 22, 2013, providers at Healthworx examined Mr. Elkins and completed a functional capacity evaluation. (R. 323-326). Mr. Elkins was able to demonstrate a full fist bilaterally, and he had 4/5 wrist and finger strength bilaterally. (R. 325). According to the Healthworx functional capacity evaluation, Mr. Elkins was able to perform medium work. (R. 326).

On January 31, 2013, Dr. Richard Meyer examined Mr. Elkins. (R. 328). Dr. Meyer also reviewed the Healthworx evaluation. (R. 328). Although Mr.

Elkins complained of wrist pain, Dr. Meyer explained that Mr. Elkins's limitations were "actually fairly light and self-limited." (R. 328). Based on his examination, Dr. Meyer assigned a 3% permanent partial impairment to Mr. Elkins's right wrist and opined that Mr. Elkins could return to work within the limits of the Healthworx functional capacity evaluation. (R. 328).

On May 29, 2013, Dr. Ekkehard Bonatz examined Mr. Elkins. (R. 333). Dr. Bonatz stated:

> [Mr. Elkins] has somewhat decreased strength bilaterally. With some gentle distraction and passive range of motion, he almost collapses in pain while sitting in a chair. He localizes the maximum point of pain to the entire volar and dorsal wrist radiocarpal area, this is different than at the time of his history. Distally a vascular examination shows no deficits on gross exam. He has a positive Tinel's and Phalen's test for the median nerve on the right, negative Tinel's sign for the ulnar nerve on either side. There is no thenar or hypothenar atrophy.
>
> He has well-healed arthroscopy portals from right wrist surgery. I do not see any dystophic changes. He has a negative axial grind test for the thumb CMC joint, pain is present to palpation of both ulnar heads.

(R. 335). Based on his examination, Dr. Bonatz concluded that Mr. Elkins had no work restrictions. (R. 335).

In May 2013, one of Mr. Elkins's treating physicians, Dr. Thomas Powell, completed work status forms in which he noted that Mr. Elkins had limited use of his left and right hands and instructed Mr. Elkins not to engage in repetive use of either hand or wrist. (R. 347). By October 2013, Dr. Powell released Mr. Elkins to work with no restrictions despite a tenosynovitis diagnosis. (R. 345-346; 364).

In October 2015, Dr. Sathyan Iyer examined Mr. Elkins at the request of the Disability Determination Service. (R. 441-451). With respect to Mr. Elkins's right wrist, Dr. Iyer stated:

> No swelling or deformities noted. Tenderness over mid dorsal wrist area is noted. Actively, the range of motion of the wrist restricted because of his subjective experience or discomfort. Dorsiflexion is 30 degrees, palmar flexion 30 degrees, and radial and ulnar deviation 10 degrees. Passively, the wrist can be moved to the full extent. No palpable abnormalities over the palms. Decreased touch sensation over the fingers. Tinel's and Phalen's signs negative.

(R. 442). Dr. Iyer found no significant abnormality with Mr. Elkins's left wrist. (R. 442). Mr. Elkins's grip strength and opposition functions were normal, and he displayed no muscle atrophy over the hands. (R. 443). Mr. Elkins had normal muscle power in his upper extremities. (R. 443).

Based on his examination, Dr. Iyer opined that Mr. Elkins could occasionally lift and carry up to 20 pounds. (R. 446). Dr. Iyer also concluded that Mr. Elkins could occasionally reach overhead, handle, finger, feel, push, and pull with his right hand. (R. 448). Dr. Iyer opined that Mr. Elkins could occasionally reach overhead, push, and pull with his left hand and frequently handle, finger, and feel with his left hand. (R. 448).

Based on this evidence, the court finds that the ALJ articulated good cause for assigning little weight to Dr. Junkins' opinion regarding disability. *See e.g., Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) ("The

ALJ found [the treating physician's] opinion inconsistent with the medical records and other evidence, and gave it less weight on that basis. Because the ALJ's rationale was adequate, we will not disturb the credibility determination."); *Roth v. Astrue*, 249 F. App'x. 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole"). Likewise, the court concludes that the state court worker's compensation order, when considered in light of the entire administrative record, does not render the ALJ's decision erroneous. The record as a whole contradicts the state court disability decision. There is no reasonable probability that the new evidence would have changed the administrative result, and the worker's compensation order "does not change the conclusion that the denial of benefits . . . was supported by substantial evidence." *McCants v. Comm'r of Soc. Sec.*, 605 F. App'x. 788, 791 (11th Cir. 2015) (per curiam). Accordingly, the Appeals Council did not err in denying review.

> B. **The Appeals Council Considered the Worker's Compensation Order, and the Appeals Council Did not Cite Chronological Relevance as Basis for Denying Review**

The record does not support Mr. Elkins's second argument that the Appeals Council refused to consider the worker's compensation order without considering whether the order was chronologically relevant. The Appeals Council accepted

Mr. Elkins's new evidence, but the Appeals Council denied review because, even in light of the worker's compensation order, the Appeals Council found no error with the ALJ's decision. (R. 2). Thus, the Appeals Council considered the worker's compensation order, and the Appeals Council did not cite chronological relevance as a basis for denying review. Therefore, the court is not persuaded by Mr. Elkins's argument that the Appeals Council failed to consider his new evidence solely because it post-dated the ALJ's decision without determining whether the new evidence was chronologically relevant.

## V. CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence, and the Commissioner applied proper legal standards in reaching the determination. Therefore, the Court **AFFIRMS** the Commissioner's final decision. The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this July 13, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE